WISCONSIN LIVESTOCK ASSOCIATION, Respondent, vs. BOWERMAN and another, Appellants.

*November 10—December 9, 1930.*

For the appellants the cause was submitted on the brief of *F. J. Rooney* and *C. G. Cannon,* both of Appleton.

For the respondent there was a brief by *Keller, Keller & O'Leary* of Appleton, and oral argument by *L. Hugo Keller*.

OWEN, J. This action was commenced in replevin to recover the possession of certain livestock. The plaintiff gave an undertaking to the sheriff under the provisions of sec. 265.04, Stats., for the delivery to the plaintiff of the stock which was the subject of the replevin action. F. E. Harriman and R. M. Harriman signed this undertaking as sureties. By its terms the sureties undertook that the property would be returned to the defendants if return thereof be adjudged, "and for the payment to him of such sum as may *for any cause* be recovered against the plaintiff," as provided by sec. 265.04 of the Statutes. The original judgment provided for a return of the livestock to the defendants, and also for the recovery by the defendants of the plaintiff of a sum in excess of $5,000 on defendants' counterclaim. This judgment was rendered against the Wisconsin Livestock Association and the Harrimans as sureties on the undertaking, requiring them to pay the amount recovered on the counterclaim as well as the value of the livestock in the event that a return thereof could not be had. The Harrimans did not appeal from this judgment, and it is contended that the judgment entered pursuant to the mandate of this court should be against the Harrimans for the said sum of $5,000, notwithstanding the fact that this court reversed the judgment rendered upon the counterclaim and ordered the entry of judgment dismissing the same. The contention is that because the Harrimans did not appeal this court could not and did not reverse the judgment as to them.

Numerous answers may be made to this contention. To begin with, judgment should not have been rendered against the Harrimans on the counterclaim. Judgment was rendered against them no doubt because of the statutory condi-

tion of the undertaking by which they undertook that the plaintiff should pay to the defendants "such sum of money as may *for any cause* be recovered against the plaintiff." It is conceded that this is sweeping language and, literally construed, was some justification for the rendition of judgment against the sureties on the counterclaim. But language found in any statute must be construed with reference to the context in which it is found and the purpose sought to be accomplished by the statute. This undertaking is provided for by the statutes relating to proceedings in replevin actions and enables the plaintiff to secure the immediate possession of the subject of the replevin action. While the language quoted is very general, its meaning as found in the statute must be limited by its context and the purpose of the statute. Obviously the "sum" which the sureties undertook that the plaintiff would pay was such sums as might be awarded against it as a result of the replevin action, such as damages sustained by the seizure under the writ of replevin, and perhaps other items. Judgment upon the counterclaim against the sureties was not authorized by virtue of this undertaking. The judgment upon the counterclaim was a distinct and separate matter which did not grow out of the replevin action, and its payment was not secured by the undertaking.

We realize that these observations are somewhat beside the issues presently before us. These considerations standing alone could not relieve the Harrimans of the judgment rendered against them on the counterclaim in the absence of their appeal from that judgment. What has been said was merely for the purpose of elucidating sec. 265.04 of the Statutes, and to indicate that judgments on counterclaims rendered in replevin actions cannot go against the sureties on the undertaking provided by that section. However, although the Harrimans did not appeal from the original judgment their liability thereon was but secondary, and

when the judgment against the Wisconsin Livestock Association was reversed, and the cause of action upon which it was predicated was held not to exist, it did away with the liability of the Harrimans. It was not necessary for them to appeal if they had no defense to their liability except that no liability existed on the part of the Wisconsin Livestock Association. When it was determined that no liability existed on the part of the Wisconsin Livestock Association it effectually disposed of any liability on the part of the sureties, whether they appealed or not. It vacated the judgment upon which they were held only as sureties and left nothing upon which or for which they were liable. While the judgment entered upon *remittitur* is not subject to this assault, it must be said to possess another infirmity. It merely provides for the return of the stock to which this court found the defendants to be entitled. Sec. 270.59, Stats., provides that the judgment should be for the return of the property or the value thereof in case a return cannot be had. The special verdict in this case found the value of the cattle of which it was held the defendants were entitled to possession. The judgment should have been for a return of these cattle or for a recovery of the value thereof in case a return cannot be had, and that portion of the judgment should go against the sureties on the undertaking. To this extent the judgment appealed from should be perfected.

Another attack is made upon the judgment because it fails to dispose of certain money which it is claimed is in the custody of the court belonging to the defendants. It appears that when the herd of cattle was condemned as tubercular, certain indemnity moneys were collected by the Wisconsin Livestock Association from the state and federal governments. It has always been conceded that one half of this money belonged to the defendants by reason of the original contract between them, referred to at length in *Wisconsin Livestock Asso. v. Bowerman,* 198 Wis. 447, 224 N. W. 729. In the answer and counterclaim of the defendants in

this action is to be found an allegation that the plaintiff has collected said money from the state and federal governments and has kept and retained the same. Just what the purpose of this allegation in this pleading is, is rather difficult to determine. It is not pleaded as a counterclaim but rather as a part of a general statement of grievances. However, it appears that on the trial the plaintiff tendered $462 into court, but this fact appears only from the minutes of the clerk of the court, which read as follows: "The plaintiff tenders payment of $462 into court subject to the determination of this case as defendants' share of T. B. indemnity." The court was requested to make disposition of this money by the final judgment entered herein. Two motions were made on the part of the defendants: first, that it be turned over to the defendants, and second, that the attorneys for the defendants be given a lien thereon and that it be turned over to them. The plaintiff also made application to the court to have it turned over to the sheriff in satisfaction of an execution issued on the judgment for costs rendered in this court. The court denied all these motions and refused to make any disposition of this money, presumably upon the theory that the money was not within the jurisdiction of the court. Defendants also appeal from the orders denying their motions in these respects.

The delivery of the money into court was informal, to say the least. Rule XV of the Circuit Court Rules, which prescribes the formality which shall attend a tender of money into court, was not even attempted to be complied with. Among other things, this rule requires that the party making the tender shall deliver to the opposite party a certificate of the clerk of the court, under the seal of the court, stating the amount of such tender, the time when brought into court, the title of the action, and by what party and under what pleading, or on what account, the same has been so brought in, which certificate before being delivered shall be recorded in the minute book of the court and an indorse-

ment be made thereon stating the volume and page where the same is so recorded. Money is generally paid into court pursuant to a pleading of tender, or in obedience to a rule or order of the court. But in this instance the money was not paid in obedience to any rule or order of the court, nor was it paid pursuant to any pleading of tender on the part of the plaintiff. It was not paid in unconditionally so that it became the property of the defendants, but, according to the minutes of the clerk, it was paid in subject to the determination of this case.

The disposition of this money, or the question of who was entitled to it, was not in issue. No question concerning the subject was submitted to the jury. We fail to see how it ever came into the custody of the court. The clerk of the court merely became a depositary of the fund. It has never become a fund of the court. It has been held that a clerk of court is not by virtue of his office authorized to receive money as a deposit except by order of the court; that money paid to him without such order may be withdrawn by the depositor at any time before the other party has manifested a willingness to accept it or the court has recognized it as a fund at its disposal, and that in case the money is lost by the clerk, the one making the deposit must sustain the loss instead of the person for whose benefit the money was received. *Hammer v. Kaufman,* 39 Ill. 87. For full discussion of the subject, see *Commercial Inv. Co. v. Peck,* 53 Neb. 204, 73 N. W. 452, in which it was held that money paid to a clerk of court during vacation to redeem from a mortgage foreclosure was not good as a tender, never came into the possession of the court, and was held by the clerk of the court as a mere depositary of the person making the payment.

From a review of this record we discover nothing to indicate that this money ever came into the possession of the court or that the court acquired any authority or jurisdiction over it. The trial judge was right in washing his hands

of the entire matter and leaving the parties to the pursuit of their ordinary legal remedies to establish their rights in this fund. It is clear that the fund is in the possession of the clerk of court and not in the possession of the court, and that the clerk of the court is holding the fund as a mere depositary of the plaintiff, the Wisconsin Livestock Association.

*By the Court.*—The orders appealed from denying plaintiff's various motions for the disposition of the fund in the hands of the clerk are affirmed. The judgment appealed from is reversed, and cause remanded with instructions to render judgment in favor of the defendants for the return of the livestock to which it has been determined they are entitled, or for the value thereof in case a return cannot be had. Appellants to recover costs.