**Gilbert H. KEGERREIS, Appellant (Defendant Below),**

**v.**

**AUTO–OWNERS INSURANCE COMPANY, Appellee (Plaintiff Below).**

**No. 4–684A152.**

Court of Appeals of Indiana, Fourth District.

Nov. 4, 1985.

---

**12.** There was no motion to dismiss or for judgment on the evidence as to the claim of wilfullness.

☙124(1)

Robert C. Forbes, Forcum, Forbes & Forcum, Hartford City, for appellant.

Carolyn W. Spengler, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellee.

MILLER, Judge.

Auto-Owners Insurance Co. brought suit against Gilbert H. Kegerreis for indemnification based on the terms of a replevin bond application which Kegerreis had executed. The claim for indemnification arose because Auto-Owners satisfied a judgment against Kegerreis's company due to Auto-Owners' status as surety on the company's replevin bond. The trial court granted partial summary judgment in Auto-Owners' favor, finding Kegerreis personally liable on the bond.[1] Kegerreis seeks relief from us, which we grant because the payment in the replevin action was not provided for in the replevin bond, but rather was for dam-

---

1. The court entered findings of facts and conclusions of law as to the question of liability, but did not reach the question of damages, interest, and attorney fees. The court also found there was no just reason for delay in entry of the final judgment on the question of liability for purposes of appeal. See Ind.Rules of Procedure, Trial Rule 56(C).

ages on a breach of contract counterclaim. Thus, Kegerreis was relieved from any personal obligation to reimburse Auto-Owners despite the broad language in the application form and entitled to summary judgment in his favor. Reversed and remanded.

## FACTS

The genesis of the case before us on appeal is a controversy between two other entities, Ecology Food Packaging, Inc. (Kegerreis's company) and Tonne Specialty, Inc. In this initial case, Ecology filed suit in Allen Superior Court seeking replevin of certain equipment it had supplied to Tonne. Following an agreement between Ecology and Tonne, the court ordered Tonne to turn over the equipment to Ecology upon Ecology's posting a $20,000 surety bond pursuant to IND.CODE 34-1-9.1-6. The bond, executed both by Kegerreis as company president and Auto-Owners as surety, was filed and stated, in pertinent part:

"Whereas plaintiff in the above action desires to give a written undertaking for delivery to it of certain personal property in the possession and unjustly detained by the defendant herein, as provided by Indiana Code 1971, 34-1-9.1-1 through 34-1-9.1-13 as added by Indiana Acts 1973, Public Law 317.

Now, therefore, we, the undersigned, do hereby obligate ourselves, jointly and severally, to said defendant under said statutory obligation, for any and all sums which may be found owing to defendant from plaintiff in this action, up to the sum of $20,000.00."

The pertinent portion of IND.CODE 34-1-9.1-6, incorporated under the terms of the bond, states that Ecology and Auto-Owners "are bound to the defendant for the value of the property, as determined by court, along with such other damages as the defendant may suffer if the property has been wrongfully taken from him." The record is not clear, but presumably Tonne

returned the equipment upon the posting of this bond. Meanwhile, Tonne filed a counterclaim against Ecology for breach of contract.[2]

In its findings of facts and conclusions of law, the Allen Superior Court determined Ecology was not entitled to possession of the replevied equipment. As for the counterclaim for breach of contract, the court specially found:

1) Ecology owed Tonne $6,832.91 for goods produced by Tonne and delivered to Ecology;

2) Ecology owed Tonne $4,600.00 for goods determined as unfit for sale which were given away or destroyed; and

3) Tonne was entitled to recover interest of $2,131.09 on the amounts owed by Ecology.

In one of its conclusions of law, the court stated Ecology and its surety, Auto-Owners, were obligated to Tonne in the amount of $13,564.00. The court then entered the following judgment: "Judgment for defendant [Tonne] for $13,564 and costs."

It is significant to note at this point in the proceedings that although Tonne's suit against Ecology included the replevin action as well as the breach of contract counterclaim, the trial court made no findings pertinent to the replevin action as to the value of the equipment in Ecology's possession, or the damages caused by Ecology in taking and withholding the equipment. As noted earlier, the replevin bond itself bound Auto-Owners only for the value of the equipment and resulting damages for its wrongful taking. In addition, the replevin judgment statute provides "When the property has been delivered to the plaintiff, and the defendant claims a return thereof, judgment for the defendant may be for the return of the property, or its value, in case a return can not be had, and damages for the taking and withholding of the property." IND.CODE 34-1-27-1. Due to the omissions of the trial court in its findings

---

**2.** Apparently Tonne sought to bring Kegerreis in as a defendant to the counterclaim, but the court granted Kegerreis's motion to dismiss.

and judgment relevant to the replevin action, and his binding specific findings with respect to the failure to pay for goods furnished under the counterclaim, we must conclude the judgment against Ecology was for the breach of the contract. Thus, at this stage of the proceedings, there had been no determination as to the value of the replevied equipment or the damages resulting from its wrongful taking.

When Ecology failed to pay after Tonne made a demand for satisfaction of the judgment, Tonne moved under the same cause number to enter judgment in the amount of $13,564.00 against Auto-Owners as surety on the bond. Although Auto-Owners was not a party to the law suit, the motion by Tonne was authorized by Trial Rule 65.1, which provides in part:

"Whenever these rules or other laws require or permit the giving of security by a party to a court action or proceeding, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits himself to the jurisdiction of the court and irrevocably appoints the clerk of the court as his agent upon whom any papers affecting his liability on the bond or undertaking may be served. His liability may be enforced on motion without the necessity of an independent action."

Ind.Rules of Procedure, Trial Rule 65.1. Auto-Owners defended on the grounds the bond was a replevin bond and could not be used to satisfy a judgment for breach of contract pursuant to Tonne's counterclaim.[3] The court, however, entered an order in the nature of an execution of a previous judgment against Auto-Owners for the dam-ages due to the breach, along with interest and court costs. Again, the trial court made no finding as to the value of the equipment or damages caused by the taking and withholding of the equipment, the proper remedies in a replevin action. Instead of appealing the decision of the Allen Superior Court, Auto-Owners paid the $13,564.00 judgment against Ecology and entered into an agreement whereby Tonne waived costs and interest from the date of judgment to which it was otherwise entitled.[4]

This sequence of events brings us to the appeal presently before us. After payment of the judgment Auto-Owners filed a complaint in a different county against Kegerreis, alleging he was liable for the payment to Tonne.[5] The basis for the alleged liability is the bond application agreement filled out as follows:

"1. Name of Applicant G.H. Kegerreis Age 58

2. Residence Address 6753 Hickory Hanover Park, Ill. Occupation Businessman

3. Business Address RR #1 Hartford City, Ind. Date of Appointment _____

4. Amount of Bond _____ Kind of Bond _____

Replevin-Plaintiff Bond Filed in Circuit Court of Grant County, State of Indiana.

\* \* \* \* \* \*

22. . . .

Title of Case *Ecology Food Packaging, Inc. vs. Tonne Specialty [sic], Inc.*"

Auto-Owners for any expenses incurred by reason of the company having executed the bond. In view of this provision, the company feels that it would be senseless to share expenses at this point only to later have to seek reimburse [sic] for those expenses from Mr. Kegerreis."
Record, pp. 191–92.

---

**3.** Auto-Owners also attempted to join Kegerreis as a third-party defendant on the basis of his liability under the bond application agreement. Apparently Auto-Owners failed to complete service of process on Kegerreis so he was not joined as a party.

**4.** In fact, Auto-Owners rejected an offer by Ecology to share expenses of an appeal from this decision. Auto-Owners explained,

"The reason for this position can be found in the bond application which Mr. Kegerreis signed. You will note, that that bond application obligated Mr. Kegerreis to reimburse

**5.** The complaint was filed in Blackford County, but the suit was venued to Grant County where judgment was rendered.

Moreover, the agreement contains the following provision:

> "To induce the AUTO–OWNERS (MUTUAL) INSURANCE COMPANY of Lansing, Michigan, a Corporation, herein called Company, to issue, continue or procure the bond herein applied for, or any renewal, replacement or continuation thereof, the Undersigned furnish the foregoing as a true financial statement, and hereby warrant the answers to the foregoing interrogatories are true and in consideration of the Company agreeing to execute or guarantee, or continue, or procure, said bond(s) the Undersigned for himself (themselves), his (their) heirs, executors, administrators, successors and assigns jointly and severally, do hereby covenant, promise and agree:

\*     \*     \*     \*     \*     \*

(4) to indemnify and keep indemnified said Company from, and against, any and all loss, costs, charges, suits, damages, attorneys fees, and expenses of whatever kind and nature which said Company shall or may, for any cause, at any time, sustain or incur, or be put to, or which it may deem necessary, whether or not necessary or the Company liable therefor, for or by reason, or in consequence of said Company having entered into, or executed, or procured, said bond(s);

\*     \*     \*     \*     \*     \*

(16) ... and in the absence or default of the Undersigned (as Principal), the Company (as Surety) may at its option exercise all the rights of said Principal, and the undersigned Principal hereby and herein gives and grants to the Surety on any said bond, an irrevocable Power of Attorney to permit said Surety to undertake and consummate any legal or other action, necessary or possible, to accomplish to the Surety the rights herein given it....

\*     \*     \*     \*     \*     \*

IN WITNESS WHEREOF, the Applicant, and any undersigned Indemnitor, has (have) caused this instrument to be signed and sealed this 6th day of Sept., 1974.

/s/ G.H. Kegerreis
(Applicant)

Witness: /s/ Dwayne W. Kilgren"

After producing and procuring numerous affidavits, admissions, and depositions, the court granted Auto-Owners' motion for summary judgment and denied Kegerreis's summary judgment motion. Kegerreis appeals the decision, alleging the following arguments:

1) The payment of the counterclaim damages by Auto-Owners to Tonne was in excess of the remedies provided for replevin bonds, thereby excusing Kegerreis from reimbursing Auto-Owners;

2) Portions of the affidavit of Arthur G. Sanguine, Jr. were improperly considered by the trial court;

3) Kegerreis signed the bond application in his corporate, and not individual, capacity;

4) The judicial bond signed by Kegerreis in his corporate capacity modified the terms of the bond application;

5) The terms of the bond application are unconscionable.

## DECISION

We reach our decision based on the first issue—Auto-Owners' payment, as surety, of Tonne's counterclaim was in excess of the replevin bond remedies. Thus, Auto-Owners payment of the counterclaim excuses Kegerreis under the indemnification agreement contained in the bond application, and summary judgment in favor of Auto-Owners was inappropriate as a matter of law. Ind.Rules of Procedure, Trial Rule 56.

First we look at the replevin bond, the subject of the lawsuit between Ecology and Tonne. Such a bond is to be interpreted like any other contract and by the same rules. *Shaver v. Kappellas* (1925), 83 Ind. App., 338, 146 N.E. 858. The language of the bond here, as reproduced above, clearly demonstrates by its own terms that the

bond was issued by Ecology under the replevin provisions of the Indiana Code, sections 34–1–9.1–1 through 13. As such, the bond is governed by the terms of I.C. 34–1–9.1–6, which specifically states that under the bond, the plaintiff executing it, Ecology, and its surety, Auto-Owners, are bound to the defendant for the value of the property, *as determined by the court,* along with such other damages as the defendant may suffer if the property has been wrongfully taken from him. The initial issue, then, is whether the Allen Superior Court was correct in awarding a judgment against Ecology on Tonne's counterclaim in the replevin action. This issue is easily resolved, because the Indiana Trial Rules permit counterclaims, and our court has indicated such counterclaims may properly be asserted in replevin actions. *See* T.R. 13 (Counterclaim and Cross-Claim); *People's State Bank v. Hall* (1925), 83 Ind. App. 385, 148 N.E. 486.

The second issue concerning the replevin bond is whether the Allen Superior Court was correct in deciding that Auto-Owners, as surety on the replevin bond, was likewise liable for damages caused by its principal's breach of contract. We conclude the Allen Court erroneously enforced the liability of the counterclaim damages against Auto-Owners.

In reaching our conclusion, we are persuaded by the reasoning of the Wisconsin Supreme Court, which addressed this very issue in *Wisconsin Live Stock Association v. Bowerman* (1930), 202 Wis. 618, 233 N.W. 639. In *Bowerman,* the plaintiff initiated a suit to recover some cattle from the defendant, while posting a replevin bond which was also signed by its sureties. As required by the applicable statute, the replevin bond secured the defendant "for the payment to him of such sum as may for cause be recovered against the plaintiff." *Id.* at 620, 233 N.W. at 640. The defendant asserted a counterclaim against the plaintiff for breach of the contract for the sale of the cattle. The court rendered a judgment against the plaintiff *and its sureties,* providing for the return of the cattle to the defendant and for recovery of $5,000 on

defendant's counterclaim. This judgment was subsequently reversed and the counterclaim dismissed, although the sureties did not themselves appeal. Pursuant to a mandate of the Wisconsin Supreme Court, a judgment was then entered against the plaintiff, from which it appealed. The plaintiff argued that, because the sureties had not appealed, the supreme court could not, and therefore did not, reverse the judgment as to them. The Wisconsin Supreme Court stated:

> "Numerous answers may be made to this contention. To begin with, judgment should not have been rendered against [the sureties] on the counterclaim. Judgment was rendered against them no doubt because of the statutory condition of the undertaking by which they undertook that the plaintiff should pay to the defendants 'such sum of money as may for any cause be recovered against the plaintiff.' It is conceded that this is sweeping language and, literally construed, was some justification for the rendition of judgment against the sureties on the counterclaim. But language found in any statute must be construed with reference to the context in which it is found and the purpose sought to be accomplished by the statute. This undertaking is provided for by the statutes relating to proceedings in replevin actions and enables the plaintiff to secure the immediate possession of the subject of the replevin action.

> While the language quoted is very general, its meaning as found in the statute must be limited by its context and the purpose of the statute. Obviously the 'sum' which the sureties undertook that the plaintiff would pay was such sums as might be awarded against it as a result of the replevin action, such as damages sustained by the seizure under the writ of replevin and perhaps other items. Judgment upon the counterclaim against the sureties was not authorized by virtue of this undertaking. The judgment upon the counterclaim was a distinct and separate matter which did not grow out of

the replevin action, and its payment was not secured by the undertaking."

*Id.* at 620–21, 233 N.W. at 640.

■ We use the *Bowerman* court's logic to answer Auto-Owners' argument that the replevin statute should be read to permit recovery for any damage to the defendant—no matter what the source of the damage—once the court has found the property was wrongfully taken by the plaintiff. Although the language of our replevin statute may be very general in stating the measure of damages,[6] our courts have long held the primary purpose of a replevin action is to recover the rightful possession of the property. *Ring v. Ring* (1961), 131 Ind.App. 623, 628, 174 N.E.2d 58, 61. With such a purpose in mind, we believe the statute authorizes damages due to a wrongful taking, and not all damages, regardless of cause, once a wrongful taking has been established. *See In re Smith* (1945), 115 Ind.App. 494, 60 N.E.2d 147, 149 ("The better rule of construction, and the rule peculiarly applicable to remedial statutes, however, is that a statute must be so construed as to make it effect the evident purpose for which it was enacted ...") (quoting *Connecticut Mutual Life Insurance Co. v. Talbot* (1887), 113 Ind. 373, 378, 14 N.E. 586, 589). As such, we reach the same conclusion as the *Bowerman* court: the judgment against Ecology upon the counterclaim was a distinct and separate matter which did not grow out of the replevin action, and judgment upon the counterclaim against Auto-Owners as surety on the replevin bond was not authorized or secured by virtue of the undertaking.

Our decision is also supported by our own case law. In *Thomas v. Irwin* (1883), 90 Ind. 557, the replevin action resulted in a verdict and judgment for the defendants, but no provision was made adjudging a return of the property, even though the verdict found the defendants entitled to a return. The defendants then sued the sureties and recovered for the value of the replevied property. The Indiana Supreme Court reversed, holding that the sureties' liability did not extend beyond the terms of their contract when read in light of the statutory provisions. *Id.* at 559.

The court noted the contract imposed liability on the surety in three independent instances: the due prosecution of the action, the return of the property if return be adjudged, and the payment of any sums of money recovered against the plaintiff. The court stated the general rule "that sureties are not to be held beyond the terms of their contract, and a statutory undertaking must be construed so as to give effect to the terms employed.... A surety cannot be held for a thing he did not undertake to perform and in this case the surety did not undertake to be responsible for the return of the property unless a return should be adjudged by the court." *Id.* at 559–60. Thus, the court reasoned that because there had been no judgment for the return of the property—only a verdict holding the defendants entitled to the return of the property—no breach of the terms of the sureties' obligations occurred and no liability attached.

In the case at hand, the recovery under a judgment on a replevin bond is statutorily limited to include the return of the property, or its value, as determined by the court, in case a return cannot be had, and damages for the taking and withholding of the property. When the Allen Superior Court entered its judgment, it found Ecology had replevied the equipment when it was not entitled to its possession. The court, however, did not order a return of the property or its value in case a return could not be had. Moreover, the damages entered against Ecology and Auto-Owners were for the breach of contract, and not for the taking and withholding of the property. As in the *Thomas* case, the judgment of the Allen Superior Court did not constitute a breach of Auto-Owners obligation as

---

6. The statute provides the plaintiff and surety are bound "for the value of the property, as determined by court, along with such other damages as the defendant may suffer if the property has been wrongfully taken from him" I.C. 34–1–9.1–6.

surety. Thus, Tonne did not have any basis for imposing the liability on Auto-Owners after Tonne failed to recover the judgment from Ecology.

■ A companion issue to the scope of the surety's liability is whether Auto-Owners could challenge the validity of the counterclaim judgment against it and its principal when Tonne sought to enforce the judgment under Trial Rule 65.1. As a general rule, a judgment against the principal is binding and conclusive on the surety, and the surety may not attack the validity of the judgment except for fraud or collusion or with defensive matters personal to him. See *Shaver, supra,* 83 Ind.App. at 342, 146 N.E. at 859; *State ex rel. Stone v. U.S. Fidelity & Guaranty Co.* (1948), 119 Ind. App. 63, 71, 78 N.E.2d 881, 885. As the *Bowerman* court noted, however, when the judgment against a surety on a counterclaim is beyond the remedies provided by the replevin statute, the surety may challenge the enforcement of the liability on appeal, but he would be bound by any such judgment in the absence of an appeal. 202 Wis. at 621–22, 233 N.W. at 641. Nevertheless, the court in *Bowerman* held the surety was released from liability even though he did not appeal the original judgment. The court ruled that because the surety's liability on the judgment was secondary, his liability was extinguished when the judgment against his principal was reversed. *Id.* We simply note in the case at hand that Auto-Owners chose to forego its right to appeal the enforcement decision, even though the Allen court erroneously enforced the liability in the face of Auto-Owners' legally correct defense that it was not liable for counterclaim damages. *See supra* text accompanying note 3. Auto-Owners instead opted to strike a deal with Tonne by paying the judgment in exchange for a waiver of costs and interest by Tonne, and to look to Kegerreis for indemnification under the terms of the bond application agreement. Thus, Auto-Owners has chosen not to pursue its appeal route and therefore would be bound by the judgment against its principal.

Next we turn to the bond application, which Auto-Owners asserts is the basis for Kegerreis's indemnification liability. Again, the courts will use the general rules which govern the construction and interpretation of other contracts in construing a contract of indemnity and in determining the rights and liabilities of the parties. *Zebrowski & Associates v. City of Indianapolis* (1983), Ind.App., 457 N.E.2d 259, 261. Moreover, courts will seek to ascertain the intention of the parties as revealed by an examination of the entire contract. *Freigy v. Gargaro* (1945), 223 Ind. 342, 60 N.E.2d 288.

Again, we refer to the reasoning of another court which was faced with a similar issue. In *Apgar v. Great American Indemnity Co.* (1933), 171 Wash. 494, 18 P.2d 46, the Washington Supreme Court was forced to determine the scope of liability imposed by an agreement which stated the indemnity company was required to pay "such sum as may for *any* cause be recovered" against the principal on the [replevin] bond. *Id.* at 495, 18 P.2d at 46. (emphasis added). In determining the extent of the indemnity company's liability under the agreement, the court reasoned that the broad language of the agreement was limited by the terms and conditions of the replevin statute. The court concluded that because the purpose of a replevin action is to determine title and possession to personal property, the language of the agreement must be restricted to the replevin action, and would not be "broadened to include liability upon independent actions for damages, even though they be treated as counterclaims and allowed as such." *Id.* at 498, 18 P.2d at 47.

■ We find the same reasoning should apply in our interpretation of the agreement between Kegerreis and Auto-Owners. Under Indiana law, the general rules which govern the construction and interpretation of other contracts apply in construing a contract of indemnity and in determining the rights and liabilities of the parties. In the construction of an indemnity agreement, we will seek to ascertain the

intention of the parties as revealed by an examination of the entire contract, and, if possible, we will give to the words which the parties used their ordinary and usual meaning. *See* 15 I.L.E. *Indmenity* § 3 (1959) and authorities cited therein; *Zebrowski, supra.*

 The language on the application, as reproduced above, states the application is for a *replevin* bond. Moreover, the indemnification agreement was for costs associated with the execution of the replevin bond. As previously discussed, Auto-Owners' payment of the damages for Ecology's breach of contract with Tonne was not within the remedies provided by statute for replevin bonds. Thus, the provisions for indemnification by Kegerreis to Auto-Owners did not include the payment of counterclaims not associated with the replevin bond, and the trial court's granting summary judgment in favor of Auto-Owners was in error and contrary to law. Finally, we believe that under the rationale of *Bowerman, supra,* Kegerreis is permitted to challenge the overbroad interpretation of the scope of liability of the agreement when Auto-Owners sought judgment against Kegerreis, just as Auto-Owners was free to challenge the erroneous determination that it was liable as a surety on a replevin bond for breach of contract damages. Unlike Auto-Owners, however, Kegerreis has preserved his ability to challenge the judgment by initiating an appeal.

Based on the above analysis, we find the trial court erred in granting Auto-Owners' summary judgment motion.

The remaining issue before us is Kegerreis's prayer that we reverse the denial of his motion for summary judgment. Kegerreis was entitled to summary judgment if the materials presented to the court showed there was no genuine issue as to any material fact and Kegerreis, the moving party, was entitled to judgment as a matter of law. T.R. 56(c). Here it was clearly established that Auto-Owners based its claim on a judgment imposed for a breach of contract for goods furnished and not paid for. There was no court determi-

nation at any stage in these proceedings of damages incurred in the replevin action by Auto-Owners or the original defendant Tonne. Such damages were the only damages Kegerreis was obligated to pay under his indemnification agreement. Thus, Kegerreis was entitled to summary judgment in his favor as a matter of law.

Reversed and remanded for further proceedings not inconsistent with this opinion.

YOUNG, P.J., and CONOVER, J., concur.