Dorothy J. BELL, Executrix of the Estate of Evelyn Lorean Johnson, Deceased, Appellant (Defendant Below),

v.

COMMONWEALTH LAND TITLE INSURANCE COMPANY, INC., Appellee (Plaintiff Below).

No. 4–1085A290.

Court of Appeals of Indiana, Fourth District.

June 30, 1986.

John T. Hume, III, Hume, Smith, Geddes & Green, Indianapolis, for appellant.

Craig D. Doyle, Indianapolis, for appellee.

MILLER, Judge.

This case comes to us from the Superior Court of Boone County. Robert L. Young sued Evelyn Lorean Johnson for specific performance of a land conveyance. While the suit was pending, Johnson wished to convey the same land to third parties. Commonwealth Land Title Insurance Company, Inc. insured title, but only after Johnson agreed to indemnify the company for any expenses arising out of a judgment in the Young litigation. Commonwealth settled the Young lawsuit and sued Johnson to enforce the indemnity agreement.

Johnson died and Dorothy J. Bell, Johnson's executrix replaced her as party defendant. Both Commonwealth and Bell moved for summary judgment. Commonwealth's motion was granted and Bell's motion denied.

We reverse finding the possibility of a settlement in the Young litigation was not covered in the indemnity agreement.

## FACTS

Evelyn Johnson owned a tract of land which consisted of all or part of five lots in Highway Park, a subdivision located in Indianapolis. In 1978, when Johnson sold this land to William F. Bane and Elizabeth A. Bane, she negotiated with Commonwealth for title insurance for the property.

Commonwealth agreed to insure title to the property, but refused to insure it against a suit filed by Robert L. Young and Lake County Trust Co. Young was seeking judgment ordering Johnson to convey the Highway Park property to him. Commonwealth informed Johnson that it would not list the Young suit as an exception to the insurance policy if she would agree to indemnify the company against loss due to an adverse judgment in this suit. Johnson agreed, and on July 24, 1978 the parties entered into the following agreement:

### "INDEMNITY AGREEMENT

This agreement by and between Evelyn Lorean Johnson, First Party, and Commonwealth Land Title Insurance Company of Philadelphia, Pennsylvania, Second Party, witnesseth that:

Whereas Second Party has been requested to issue a policy or policies of title insurance covering the title to the following described real estate, to-wit:

Lots 51, 52, 53, 54, 55 in Resubdivision of Highway Park, an Addition to the City of Indianapolis, as per plat thereof, recorded in Plat Book 18, pages 104 and 105 in the Office of the Recorder of Marion County, Indiana, except 5 feet off the entire East end of the above described Real Estate taken for the opening and widening of Keystone Ave.

and,

*Whereas said title is subject to the following defects, objections and/or encumbrances, to-wit:*

*Any judgment or decree entered in a suit for specific performance filed May 16, 1978, Robert L. Young VS*

*Evelyn Lorean Johnson in Marion Superior Court, Cause No. S 778–0567 and notice of said suit filed in the lis pendens records as #3823.*

and,

Whereas said insurer has been requested to issue its said policy or policies of title insurance without exception to or specifically insuring against the foregoing defects, objections and/or encumbrances, First Party hereby agrees to fully protect and save harmless the said company from any and every expense, loss or damage which it may suffer, expend or incur under, by reason of or arising out of the policy or policies of title insurance referred to above by reason of the foregoing defects, objections and/or encumbrances." (Emphasis added)

On September 26, 1978, Young amended his complaint to include the Banes as party defendants. Commonwealth retained counsel on behalf of the Banes; Johnson was represented by her own attorney.

In November, 1980 Commonwealth's attorney commenced settlement negotiations with Young's attorneys. After Commonwealth and Young settled for $17,500, Young dismissed the suit against the Banes. It is not clear that Commonwealth ever notified Johnson of the settlement negotiations. Johnson did not consent to the settlement award.

Johnson later settled with Young, and Young dismissed the suit against her.

Commonwealth filed suit seeking indemnification for the funds it expended as a result of the Young litigation. Before the case reached trial, Evelyn Johnson died, and Dorothy J. Bell, Johnson's executrix, was substituted for Johnson as party defendant.

## DECISION

### I.

■ Indemnity agreements are a form of contract, and we construe such agreements according to the rules and principles of the law of contracts. *Kegerreis v. Auto- Owners Insurance Co.*, (1985), Ind.App., 484 N.E.2d 976, 983; *State v. Daily Express, Inc.*, (1984) Ind.App., 465 N.E.2d 764; *Zebrowski & Associates v. City of Indianapolis*, (1983) Ind.App., 457 N.E.2d 259. In interpreting these agreements we look to the words of the agreement; if they are clear and unambiguous we will give them their plain and ordinary meaning. *Anderson v. State Farm Mutual Auto Insurance Co.*, (1984) Ind.App., 471 N.E.2d 1170.

■ Bell argues Johnson only agreed to indemnify Commonwealth for losses resulting from an *adverse judgment* in the Young litigation. Commonwealth responds that the agreement was meant to indemnify it against *any losses* incurred in the litigation. Our examination of the terms of the agreement leads us to the conclusion Bell's argument is correct.

The agreement consists of an introduction followed by three longer clauses. The first of these clauses identifies the parcels of land to be insured; the parties do not disagree as to the meaning of this clause.

The second clause reads:

"Whereas said title is subject to the following defects, objections and/or encumbrances, to-wit:

Any judgment or decree entered in a suit for specific performance filed May 16, 1978, Robert L. Young VS Evelyn Lorean Johnson in Marion Superior Court, Cause No. S 778–0567 and notice of said suit filed in the lis pendens records as #3823."

The next clause sets forth the general terms of the indemnification:

"Whereas said insurer has been requested to issue its said policy or policies of title insurance without exception to or specifically insuring against the foregoing defects, objections and/or encumbrances, First Party hereby agrees to fully protect and save harmless the said company from any and every expense, loss or damage which it may suffer, expend or incur under, by reason of or arising out of the policy or policies of

title insurance referred to above by reason of the foregoing defects, objections and/or encumbrances."

The agreement only required Johnson to indemnify Commonwealth for "every expense, loss or damage ... it may suffer ... by reason of the forgoing defects, objections, and/or encumbrances. Bell argues that the agreement defined "defects, objections, and/or encumbrances" to be "any judgment or decree" entered in the *Young* litigation; since no court entered a judgment in that case, Commonwealth had no right to indemnification.

Commonwealth takes a different view of the agreement. The company argues the second clause does not define the defects against which the company insured title. Rather, Commonwealth states the clause merely identified the defect and exception to coverage that had been listed on the title insurance commitment. The company further argues that Johnson agreed to indemnify it for any loss arising out of the insurance policy.

We find Commonwealth's argument unconvincing. In the context of this agreement, it makes no difference whether the clause defined the title defect or identified the title defect. The practical effect of either view is to limit the coverage to the defect identified or defined—a judgment or decree in the Young litigation.

Commonwealth cites *Barnard v. Megorden,* (1931) 94 Ind.App. 391, 178 N.E. 868, to support· the contention that indemnity agreements are to be construed in favor of the indemnitee.[1] This is not a completely accurate statement of the holding in *Megorden. Megorden* did hold that where the terms of an indemnity agreement are ambiguous, it should be construed in favor of

the indemnitee, but *Megorden* also held that where the terms of the agreement are unambiguous, the agreement should not necessarily be construed in favor of the indemnitee. If we were to accept Commonwealth's interpretation of the agreement, we would have to find that Johnson, although believing the Young litigation to be meritless, agreed to allow Commonwealth to fix her liability. We are convinced that Johnson intended for a court, and not Commonwealth, to determine the extent of her potential liability. Any other interpretation would eliminate Commonwealth's incentive to defend the suit, since it would be compensated whether or not there was a judgment in the case.

We are not saying that we can imagine no instance in which Johnson would choose to expose herself to potentially large liabilities to be determined by Commonwealth. We do say that we will not find that she had exposed herself to such liabilities in the absence of unambiguous language stating that she had done so.

We find that the terms of this agreement are unambiguous, and that they limit Johnson's liability to judgments or decrees in the Young litigation.[2]

## II.

 The parties disagree as to the status of a dismissal in Indiana. Bell contends that a settlement and dismissal do not constitute a judgment; Commonwealth responds that a dismissal with prejudice is a dismissal and adjudication on the merits. Both sides produced case law in support of their arguments.

Bell cites *Four Winns, Inc. v. Cincinnati Insurance Co.* (1984), Ind.App., 471

---

**1.** We would also note that Commonwealth prepared this agreement. If it were ambiguous we would be inclined to strictly construe its terms against Commonwealth. Generally, the rules of contract construction call for strict construction of the contract against the party who drafted it. *Colonial Discount Corp. v. Berkhardt,* (1982) Ind.App., 435 N.E.2d 65. Commonwealth drafted the agreement, and Commonwealth should not complain that the agreement does not have the intended effect.

**2.** As we recently stated in *Kegerreis v. Auto-Owners Insurance Co.,* (1985) Ind.App., 484 N.E.2d 976, a surety is only obligated to indemnify for those things provided for in the indemnity agreement. We will not hold the surety liable for expenses which do not arise out of the agreement.

N.E.2d 1187, in support of her position. In *Four Winns*, as in the case at bar, the court was called upon to decide whether one party had a duty to indemnify another. The court found that indemnity would be appropriate where "the seller must have paid or must have been compelled to pay a judgment recovered by the injured party." *Id.* at 1189. The court then addressed the question of whether a settlement and dismissal constituted a judgment:

> "There was no judgment here. Rather, there was a settlement and a dismissal of the principle lawsuit. A settlement is neither a judgment nor an admission of liability." *Id.*

Commonwealth attempts to distinguish *Four Winns* because it involved implied indemnity. While it is true that *Four Winns* is an implied indemnity case, we see no reason to reject the holding that a settlement and dismissal is not a judgment. Implied indemnity requires a judgment, and the indemnity agreement at issue here requires a judgment. We see no good reason to find that a settlement and dismissal will fulfill the judgment requirement in one instance but not in the other.

Commonwealth cites several cases which have held that a dismissal is the equivalent of a judgment for certain purposes. *Aeronautics Commission of Indiana v. State ex rel. Emmis Broadcasting Corp.*, (1982) Ind.App., 440 N.E.2d 700, and *Midway Truck Center v. Gilmore*, (1981) Ind.App., 415 N.E.2d 134, both held a dismissal with prejudice to be a dismissal on the merits. These decisions recognized that a dismissal with prejudice marked the end of the litigation, and, under the principles of *res judicata*, prevented relitigation of issues which were raised or should have been raised in the initial litigation. These cases only find a dismissal with prejudice to be similar to a judgment in that both a dismissal and a judgment preclude relitigation of an action.

*State v. Wilbur*, (1984), Ind.App., 471 N.E.2d 14, dealt with dismissal under Ind. Rules of Procedure, Trial Rule 37. T.R. 37(B)(2)(c) provides that a trial court may dismiss an action or proceeding if a party refuses to comply with discovery orders. The court found that a dismissal under T.R. 37(B)(2)(c) is an adjudication on the merits. The court's ruling merely recognized that the trial court could dismiss an action and prevent a party from relitigating the claims or defenses which were dismissed; it did not hold a dismissal actually resolved any factual or legal issues. In any event, the *Wilbur* decision is specifically limited to T.R. 37 dismissals.

Our reading of these cases leads us to believe that a dismissal with prejudice is similar to a judgment on the merits in that it precludes relitigation of the merits, but a dismissal is not a judgment in all respects, since it does not resolve issues of law and fact.

We find that the indemnity agreement only protected Commonwealth against a judgment entered in the Young litigation, and we further find that no judgment was entered in that litigation. We, therefore, reverse the trial court's summary judgment in favor of Commonwealth, and we also reverse the trial court's denial of summary judgment in favor of Bell.

YOUNG, P.J., and CONOVER, J., concur.