**Debbie J. (Kelley) NEESE,
Appellant–Respondent,**

v.

**Larry J. KELLEY, Appellee–Petitioner.**

**No. 67A04–9802–CV–105.**

Court of Appeals of Indiana.

Feb. 17, 1999.

James Wm. Phipps, Greencastle, Indiana, Attorney for Appellant.

Cheryl A. Danberry, Greencastle, Indiana, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Debbie (Kelley) Neese, ("Debbie"), appeals the trial court's order terminating Larry Kelley's ("Larry"), obligation to make monthly payments on a land contract.

We affirm in part and reverse in part.

### ISSUES

I. Whether the trial court committed reversible error in holding summary proceedings.

II. Whether the trial court erred in terminating Larry's obligation to make the monthly land contract payments.

### FACTS

Larry filed a petition for dissolution of marriage in April 1982 in the Putnam Circuit Court. At that time, Larry and Debbie had three children and were purchasing a residence from Mr. and Mrs. Berry on contract. The monthly payment was $167.79. At the dissolution hearing, the following colloquy ensued:

Larry's Counsel: And in addition to a, an agreement that Debbie agree to pay and hold harmless all obligations under the contract, do you understand through your attorney that there is an agreement that $167.7[9] per month be paid by you in lieu of that much child support on the payment to Mr. Berry....

Larry: Yes, sir....

Larry's Counsel: And you contemplate that your support obligation for these three infant children will be much higher than $167.79 and so you, there would be no problem in you paying that much to the Berry[ ]s directly?

Larry: No problem....

Larry's Counsel: And the remainder of your support would be paid into the Office of the Clerk of the Putnam Circuit Court?

Larry: Yes, sir.

(R. 60).

In addition, Debbie testified as follows on direct examination:

Debbie's Counsel: Debbie, it was mentioned in the testimony of your husband that you and he had made certain agreements.... [One], is that he assign all of his right, title and interest to this Commercial Place real estate that's being bought on contract from Milton W. Berry and Mary L. Berry to you.

Debbie: Right.

Debbie's Counsel: And that he keep and maintain the payments of $167.79 per month paid in lieu of that much support and that at the time that you either pay this house off or dispose of it in such a way that there's no contractual obligation that you will, he will make all of the support payments to you.

Debbie: Yeah....

Debbie's Counsel: And that, you understand that these payments that he's going to make will be with your money?

Debbie: Yeah.

(R. 72).

At the conclusion of the hearing, the trial court ordered in part as follows:

The Court finds that the marriage existing between the parties is irretrievably broken and orders that marriage dissolved.... And as child support, the husband is ordered to pay the monthly land contract payments on the residence and is ordered to assign his interest in that property and contract to her. Additionally, as child support, he's ordered to pay $45 per week through the Clerk's Office....

(R. 75–76). The written dissolution decree provides in pertinent part that: "reasonable support for the children would be $45.00 per week paid to the Clerk of Putnam county ... and payment of $169.79 per month on the land contract for the residence." (R. 24).

In June 1992, Debbie filed a petition for modification of support in the Putnam Circuit Court. At the hearing on the petition, Debbie contended that Larry's land contract payment was part of their property settlement, not child support. Larry contended that the land contract payments were child support and that he should receive a credit for them. The trial court judge, who had presided over the dissolution hearing and issued the dissolution decree, agreed with Debbie and concluded as follows in his order: "That no credit against child support for land contract payments should be allowed, since those payments were meant to be a division of property." (R. 2). The trial court also ordered Larry to pay weekly child support of $135.00. Larry did not appeal this order.

In 1996, Larry filed a petition to emancipate his two older children and to modify child support wherein he requested that the trial court terminate his obligation to make the land contract payments. The trial court judge, who had had no prior involvement in the case, held a hearing on the petition on December 18, 1996. At the beginning of the hearing, the judge asked the parties whether the facts were in dispute. The parties responded that they were not. The judge then told the parties that she would "like to do this summarily." (R. 107). Specifically, she asked the parties' counsels to summarize the issues and agreed facts. In addition, she accepted several exhibits such as a child support worksheet and other financial documents. The court did not swear in witnesses or hear testimony.

At the close of the hearing, Debbie's counsel objected to "not being able to present evidence in the usual and traditional manner." (R. 125). The trial court responded as follows: "Was there any fact that was disputed that I did not, what was it that your evidence could have produced for this Court ... that we have not...." (R. 125). Counsel conceded that there were no disputed facts that were not discussed; however, he argued that the "parties could have made a rendition of the facts that would have given the court an insight to the fact that may or may, that may have come out in a little different manner than what has been presented by counsel." (R. 125–26).

The trial court emancipated the two older children and asked the parties to brief the land contract issue. Thereafter, the trial

court issued an order which provides as follows:

> The Court having reviewed the evidence submitted and arguments given now finds that the land contract payment ordered in the decree was a part of [Larry's] child support obligation. Since [Larry] has now been ordered to pay guideline support on the one child still unemancipated, [Larry's] obligation to make monthly payments on the land contract is no longer required as of this date.

(R. 37). Debbie now appeals the trial court's termination of Larry's obligation to make the monthly land contract payments. She does not appeal the emancipation of the two older children.

## DECISION

### I. *Form of the Proceedings*

Debbie first argues that the trial court erred in holding summary proceedings. Larry responds that Debbie has waived appellate review of this issue because she failed to object to the form of the proceedings at the beginning of the hearing. Waiver notwithstanding, he contends that "Debbie has failed to show any harm or prejudice," Larry's Brief, p. 18, as a result of the form of the proceedings. We agree with Larry.

■ Our review of the record reveals that Debbie did not object to the form of the proceedings when the trial court told that parties that it would "like to do this summarily." (R. 107). Failure to make a contemporaneous objection at trial results in waiver of the issue on appeal. *White v. State,* 687 N.E.2d 178, 179 (Ind.1997). Debbie has therefore waived appellate review of this issue.

■ Waiver notwithstanding, Debbie's argument is unpersuasive. When Debbie's counsel objected to the form of the proceedings at the close of the hearing, the trial court asked him whether there were any disputed facts which were not discussed. Counsel conceded that there were not. He did however allege that the parties' rendition of the facts "may have come out in a little different manner than what has been presented by counsel." (R. 125–26).

■ Indiana adheres to the rule requiring a showing of prejudice before reversal may be granted. *Christensen v. Sears, Roebuck and Co.,* 565 N.E.2d 1103, 1106 (Ind.Ct.App. 1991), *reh'g denied, trans. denied.* The complaining party has the burden of showing actual prejudice. *Id.* Here, Debbie's mere allegation that the parties might have presented the undisputed facts in a different manner does not demonstrate prejudice. We therefore find no reversible error here.

### II. *Land Contract*

■ Debbie further contends that the trial court erred when it terminated Larry's obligation to make the land contract payments. Specifically, she contends that the "payments lie within the category of property settlement and that the law requires finality removing them from modification." Debbie's Brief, p. 9. In support of her contention, she directs us to the trial court's 1992 modification order which states that the land contract payments were "meant to be a division of property." (R. 2).

According to Debbie, the "issue whether Larry's obligation to continue making the payments on the installment land contract as agreed upon and ordered in the original decree of 1982 was in the nature of a child support or property settlement provision was subjected as an issue in the same form, litigated, and conclusively determined in the proceedings in 1992." Debbie's Brief, p. 10. Therefore, Debbie argues, "[a]s to the instant issue, those findings, as adjudicated, rendered the instant issue between the parties res judicata." Debbie's Brief, p. 10.

Larry responds that the 1992 order was "actually ... an improper and invalid attempt to modify the original [1982] property division order...." Larry's Brief, p. 12–13. Therefore, according to Larry, because the "trial court had no authority to modify the final property division order, such a judgment is void and without legal effect at any time.... A void order can not, as Debbie claims, have the effect of rendering any issue *res judicata.*" Larry's Brief, p. 13. We agree with Debbie.

■ At issue in this case is the branch of *res judicata* known as "estoppel by judgment" or "claim preclusion" which holds that the prior adjudication of a cause of action is a bar to future litigation of that claim. *D.L.M. v. V.E.M.*, 438 N.E.2d 1023, 1027 (Ind.Ct. App.1982). *Res judicata* precludes re-litigation of a cause of action that has been fully and finally determined on its merits by a court of competent jurisdiction. *Id.* Therefore, when a party relies on *res judicata*, he or she must prove that the cause of action has been fully and finally determined on the merits between the same parties by a court of competent jurisdiction. *Id.*

■ A judgment entered by a court that lacks subject matter jurisdiction is void and may be attacked at any time. *Id.* If a court has the power to determine cases of the general class to which a particular case belongs, it has subject matter jurisdiction to consider a particular case in that class, absent a specific, timely objection to its jurisdiction of the particular case. *Id.* The judgment of a court without jurisdiction of the particular case is not void, and such jurisdiction is waived if not attacked by a timely objection and direct appeal. *Id.* Personal jurisdiction can also be waived when a party seeks affirmative relief or fails to make a timely objection. *Id.* Mere errors of law do not deprive a court of its jurisdiction or open its judgment to collateral attack. *Id.* Rather, such errors are voidable and can only be corrected by direct appeal. *Id.*

In *D.L.M.*, petitioner V.E.M. had filed a petition for dissolution of marriage in an Illinois court in 1961. D.L.M. failed to make an appearance, and the court entered a decree of dissolution which stated that the marriage had produced two children and that the petitioner was pregnant with a third child of whom D.L.M. was the father. In 1962, in an order modifying the decree which noted that D.L.M. was present in court, the trial court found that the child born to V.E.M. in January 1962 was D.L.M.'s daughter. Accordingly, the court awarded V.E.M. medical expenses and child support.

Between 1966 and 1976, V.E.M. instituted several proceedings to enforce support, and in January 1976, she sought assistance from the Indiana court system by filing a petition for reciprocal support in the Hendricks Circuit Court. D.L.M. responded with a motion for summary judgment wherein he alleged that because the child was born after the dissolution, she was not D.L.M.'s child. The trial court granted D.L.M.'s motion. V.E.M. filed a motion for reconsideration which the trial court denied. She did not file a motion to correct errors or attempt to appeal the trial court's decision.

In May 1979, V.E.M. filed a second action in the Hendricks Circuit Court under the Uniform Reciprocal Enforcement of Support Act. D.L.M. filed a motion to dismiss in which he asserted that V.E.M.'s action was barred by *res judicata* because the 1976 Hendricks Circuit Court order granting his summary judgment motion stated that the child was not his. The trial court judge, who had had no prior involvement in the 1976 case, denied D.L.M.'s motion and held a trial on the merits. Thereafter, the court ordered D.L.M. to pay V.E.M. $4,360 in support arrearages, child support of $30.00 per week, and educational expenses of up to $1,000.00 per year.

D.L.M. appealed and argued, among other things, that the doctrine of *res judicata* required that the 1979 support petition be dismissed. V.E.M. responded that the Hendricks Circuit Court lacked jurisdiction in 1976 based upon U.R.E.S.A. and because it failed to accord full faith and credit to the Illinois determination of paternity. We agreed with D.L.M.

Specifically, we found that the Hendricks Circuit Court had jurisdiction in 1976 pursuant to U.R.E.S.A. We further found that the Hendricks Circuit Court may have erred in failing to accord full faith and credit to the Illinois determination of paternity. Nevertheless, this would have been a mere error of law which would not have deprived the court of subject matter jurisdiction. *Id.* We therefore found that the trial court erred in denying D.L.M.'s motion for the reason that V.E.M.'s 1979 U.R.E.S.A. action was barred by principles of *res judicata*. Accordingly, we reversed the trial court.

In a concurring opinion, Judge Ratliff stated that although he "abhor[red] the severity of the result reached[,] [he found] the majority opinion technically correct and the applicable rules of law properly applied." *Id.* at 1030. Specifically, Judge Ratliff pointed out that the 1976 summary judgment was not void. At most, it was simply wrong. If the order was erroneous, it was appealable. V.E.M., however, failed to exercise her appellate rights. The 1976 judgment was therefore binding upon us.

The facts before us are strikingly similar to those in *D.L.M.* Here, the trial court may have erred in 1992 when it found that the land contract payments were part of the property division and not child support. Nevertheless, this would have been a mere error of law which would not have deprived the court of subject matter jurisdiction. Therefore, as in *D.L.M.*, the trial court's 1992 order was not void. At most, it was simply wrong. If the order was wrong, it was appealable. Larry, however, failed to exercise his appellate rights. The judgment is therefore binding upon us, and *res judicata* requires that the trial court's order terminating Larry's obligation to make monthly land contract payments be reversed. *See Ondo v. Kemper,* 691 N.E.2d 1262 (Ind.Ct.App.1998).

Affirmed in part and reversed in part.

RUCKER, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The majority holds that the determination made in 1992 is res judicata, in that Larry may not challenge Debbie's claim as made in that "action." I would note that the "action" in 1992 was a petition for support modification. To be sure, at *issue* in that proceeding was the matter of the land contract payments and more particularly whether those payments were a division of property or were in the nature of child support. Accordingly, I would hold that the doctrine here involved is one of issue preclusion rather than claim

preclusion. *Wedel v. Amer. Elec. Power Serv. Corp.* (1997) Ind.App., 681 N.E.2d 1122, 1131, *trans. denied.*

The implication of the majority decision here is that the "claim," i.e., support modification, precludes future litigation. To so state, however, is to imply that once there has been a modification of support, there can be no future modification no matter what issues may or may not be involved in the future "claim". The question is more accurately stated to be whether the land contract payments were support or were a distribution of the marital property.

Be that as it may, whether claim or issue preclusion, the determinative issue is whether the 1996 trial court could rectify the clear error of the 1992 determination, so as to restore the unmistakable validity of the 1982 decree and its categorization of the contract payments as support. I would hold that the 1996 trial court was enabled to do so in that all it did was to give res judicata effect to the 1982 determination.

In actuality, the 1992 determination constituted an invalid attempt to modify the property distribution made in 1982. See I.C. 31–15–7–9.1 (Burns Code Ed. Repl.1997 & Supp. 1998), formerly I.C. 31–1–11.5–9, *repealed by* Acts 1997, P.L. 1, § 157.[1] The order added to the marital estate to the extent that Larry's land contract payments were deemed to be property and increased Debbie's equity in the property. Conversely, by denying Larry credit for those payments against support, the 1992 order appears to have been a retroactive modification of support giving Debbie an arguable claim for a sizable support arrearage.

The 1992 order purports to change the nature of the contract payment obligation by stating that "those payments were *meant to be* a division of property." Record at 2 (emphasis supplied). Whether or not they were meant to be a division of property, the fact remains that they were not a division of property. The 1992 trial court could not transform child support into property divi-

---

1. The General Assembly has specified that orders concerning property distribution may not be re-voked or modified except for fraud.

sion no matter how desirable the court thought such result to be.[2]

Failure of a party to make a timely procedural challenge to a judicial determination, order or judgment, though perhaps final and/or appealable, is not always fatal to a subsequent challenge. As noted in *Murphy v. Murphy* (1998) Ind.App., 698 N.E.2d 877, 879, *reh'g denied*, equitable principles are applicable in dissolution matters. Citing *Wabash Valley Coach Co. v. Turner* (1943) 221 Ind. 52, 46 N.E.2d 212, 217, the *Murphy* court said:

> "Equity looks beneath rigid rules to find substantial justice and has the power to prevent strict rules from working an injustice." 698 N.E.2d at 879.

Dissolution actions are creatures of statute and are of a special nature, neither wholly legal nor wholly equitable in nature. 27A C.J.S. *Divorce* § 5 (1986); *see Anderson v. Anderson* (1979) Ind.App., 399 N.E.2d 391. They are more in the nature of an equitable action, however, and certainly no one would seriously question that some questions presented are "of purely equitable cognizance." 27A C.J.S. *Divorce* § 5 (1986); *see Powell v. Powell* (1885) 104 Ind. 18, 3 N.E. 639, 645. Matters of property distribution and child support are clearly such questions.

The 1996 order here appealed was, in effect, merely giving a required res judicata effect to the 1982 decree, which the 1992 court simply ignored. Under persuasive principles of equity, it was entitled to do so.

I would affirm the judgment which is the subject of this appeal.

**2.** Perhaps the trial court, like Humpty Dumpty, was attempting to exercise his mastery of the situation. The character in Lewis Carroll's *Through the Looking–Glass* Ch. 6 (1872) said: "When I use a word ... it means just what I choose it to mean—neither more nor less."