Andrew K. CUNNINGHAM,
Appellant–Respondent,

v.

Diana L. CUNNNINGHAM,
Appellee–Petitioner.

No. 79A05–0210–CV–493.

Court of Appeals of Indiana.

May 7, 2003.

---

Ann G. Davis, Lafayette, IN, Attorney for Appellant.

## OPINION

MATHIAS, Judge.

Andrew K. Cunningham's ("Father") and Diana (Cunningham) Cartwright's ("Mother") marriage was dissolved in 1998. Mother and Father were awarded joint custody of their two children, with Mother having physical custody. In 2002, Father

filed a petition to modify custody in Tippecanoe Superior Court. The trial court denied the petition, and Father appeals raising three issues, which we restate as the following two:

I. Whether the trial court erred when it denied Father's petition to modify custody; and,

II. Whether the trial court abused its discretion when it refused to conduct an in camera interview with the children unless both parties agreed.

Finding that there is evidence to support the trial court's denial of Father's petition to modify custody, a decision to which we must give substantial deference, we affirm.

### Facts and Procedural History

Father's and Mother's marriage was dissolved in 1998. Father and Mother were awarded joint custody of their two children, K.C. and N.C., with Mother having physical custody. At the time of the divorce, K.C. was nine years old and N.C. was nearly seven years old. In 1999, Mother married Don Cartwright ("Stepfather"), who has custody of his three minor daughters.

On July 30, 1999, Father filed his first petition to modify custody. At that time, a guardian ad litem ("GAL") was appointed. In his report, the GAL concluded that Mother should retain physical custody of K.C. and N.C. At the time of that report, Mother indicated that she and Stepfather were purchasing a home in Lebanon, Indiana, which is only thirty-two miles south of Father's home in Lafayette. Family therapist, Dennis Edwards, was also hired to complete a custody evaluation. Dr. Edwards determined that Father should be granted physical custody of the children. On April 4, 2000, the trial court denied Father's petition to modify custody.

It is not entirely clear from the record whether Mother, K.C., and N.C. ever resided with Cartwright and his three daughters prior to January of 2001. However, due to instability in Mother's marriage and her father's illness, K.C. and N.C. resided with Father from the summer of 2000 until January of 2001. Also, at all times prior to January of 2001, K.C. and N.C. attended school in Tippecanoe County.

In January of 2001, Mother, with K.C. and N.C., moved to Indianapolis where they began to live with Stepfather and his daughters. K.C. and N.C. were enrolled in Warren Township Schools where they remain today. Father was unable to continue with his court ordered Wednesday night visitation due to the eighty-mile distance between the two residences. However, he regularly sees the children nearly every weekend, which is in excess of his court-ordered visitation of every other weekend.

After the move to Indianapolis, K.C.'s grades dropped significantly, but N.C.'s grades remained consistent. Both children no longer participate in extracurricular activities to the extent that they were able to do so prior to moving to Indianapolis. Also, since the move to Indianapolis, K.C. admits to using marijuana on at least one occasion. Stepfather admits that his relationship with K.C. is "a little strained" and that "it's a difficult situation." Tr. p. 235. Mother believes that K.C.'s and N.C.'s relationship with their stepsisters is good, but also admits that there have been adjustment problems with blending the two families.

On May 9, 2002, Father filed a second petition to modify custody. The previously appointed GAL filed a supplemental report, and Dr. Edwards filed a second custody evaluation. Both recommended that Father should be awarded physical custo-

dy of the children. In his report, the GAL concluded:

> [K.C.] has not adjusted well to the events and changes that have occurred in the mother's home and life the past 3 years. He has for a long period of time talked about living with his father, and based on all that has happened I believe it is in his best interests for that to occur at this time.

> [N.C.] has avoided some of the inter family conflicts in the mother's house. My perception is she "flys below the radar" not wanting to draw attention or create conflict in the home. She has had a lengthy opportunity to live in the mother's/stepfather's home and assess how she feels about it and her stepsisters. She has spent considerable visitation time with the father since the divorce. She feels she would like an opportunity to try living in her father's home. I believe she should be given an opportunity to try living with her father.

Appellant's App. p. 24.

During his custody evaluation, Dr. Edwards interviewed only Mother, Father, and the children. He also asked both K.C. and N.C. to complete certain sentences expressing their feelings on a worksheet entitled "Incomplete Sentences Blank." In his report, Dr. Edwards noted that their "responses to the Incomplete Sentences Blank are dominated by the stress they have been under regarding the conflict between their parents and the conflict in the Cartwright home." Appellant's App. p. 16. However, when he testified at the hearing held on Father's petition, Dr. Edwards stated, "it's not too good to read too much into one response unless we've had a follow-up interview in which you ask, what did you mean by that, or can you tell me some more about that." Tr. p. 32. Dr. Edwards then stated that he did not con-

duct a follow up interview with the children. Tr. p. 32.

During Dr. Edwards' custody evaluation, both children indicated a preference to live with Father. Dr. Edwards also observed that K.C. has developed a negative attitude about school that was not present during his initial evaluation in 1999. Finally, in his report, Dr. Edwards stated:

> At the time of my initial evaluation, I had concerns about the children being able to adjust to multiple changes, including school, neighborhood, home and the stepfamily living situation, if primary custody was awarded to the mother. It would appear that the children have had difficulty making these adjustments, particularly [K.C.]. They have had to try to "fit in" with an existing family and home, sharing living space with stepsisters. This stress, along with the separation from his father, seems to have undermined [K.C.'s] motivation to succeed in school. I am concerned that neither parent sought any professional counseling to help with those adjustment difficulties.

Appellant's App. p. 17.

A hearing was held on Father's petition on August 22, 2002. At the hearing, both the GAL and Dr. Edwards testified, in addition to Mother, Stepfather, Father, and several family members. Also, Father's fiancée, who now resides in Father's home with her thirteen-year old son, testified regarding her relationship with K.C. and N.C. At the hearing, both Father and Mother indicated their willingness to attend counseling with the children. While Mother admitted that there have been adjustment problems in blending the two families, she also testified that K.C. and his stepsister Kelly, who are close in age, ride bikes and go shopping together, and that they are pretty good friends. Tr. p.

169. She stated that N.C. and her stepsister Jamie, who are the same age, do everything together. Tr. p. 169. Mother testified that both children have made good friends in their neighborhood and at school. Tr. p. 177. Mother also stated that because Father cannot reasonably exercise his Wednesday night visitation due to the move to Indianapolis, she allows the children to go to Father's home more often than the court-ordered visitation of every other weekend. Tr. p. 176.

On September 24, 2002, the trial court issued its findings of fact and conclusions of law. The trial court found that Father failed to prove that there was a substantial change in circumstances requiring a modification of custody and denied his petition to modify custody. The court also ordered Father, Mother, and the children to undergo family counseling. Father now appeals. Additional facts will be provided as necessary.

## Standard of Review

Initially, we note that Mother did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for the appellee. *In re the Paternity of C.R.R.*, 752 N.E.2d 58, 60 (Ind.Ct. App.2001). We apply a less stringent standard of review with respect to showings of reversible error, and we may reverse the trial court's decision if the appellant can establish prima facie error. *Id.* (citing *Fisher v. Bd. of Sch. Trs.*, 514 N.E.2d 626, 628 (Ind.Ct.App.1986)). "Prima facie error, in this context, is defined as 'at first sight, on first appearance, or on the face of it.' " *Id.* (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind.Ct.App. 1985)). If an appellant is unable to meet that burden, we will affirm. *Id.*

Father is appealing a decision in which the trial court entered findings of fact and conclusions of law, so we apply a two-tiered standard to review the trial court's decision. "First, we determine whether the evidence supports the findings and second, whether the findings support the judgment." *Carmichael v. Siegel*, 754 N.E.2d 619, 625 (Ind.Ct.App.2001). On review, we neither reweigh the evidence nor judge the credibility of the witnesses. *Hanks v. Arnold*, 674 N.E.2d 1005, 1007 (Ind.Ct.App.1996). "We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind.2002) (citation omitted).

We have a "preference for granting latitude and deference to the trial court in family law matters." *Id.* In *Kirk*, our supreme court explained the reasons for this deference:

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.
>
> Therefore, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal."

*Id.* (quoting *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)).

## I. Modification of Custody

█ Father argues that the trial court erred when it denied his petition to modify custody because he "met his burden of proving that there have been substantial changes in these children's lives which have had a detrimental effect upon the children and which have not served their best interest." Br. of Appellant at 9. Pursuant to Indiana Code section 31–17–2–21, a trial court may not modify custody unless the modification is in the best interests of the child and a substantial change has occurred in at least one of the statutorily enumerated factors a court may consider in its initial determination of custody. Ind.Code § 31–17–2–21 (1998 & Supp. 2002); *Haley v. Haley*, 771 N.E.2d 743, 747 (Ind.Ct.App.2002). Those factors are:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parent or parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

    (A) home;

    (B) school; and

    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Ind.Code § 31–17–2–8 (1998 & Supp.2002).

█ "In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating the existing custody should be altered." *Kirk*, 770 N.E.2d at 307. The party seeking modification must demonstrate that the existing custody order is unreasonable because, in general, "stability and permanence are considered best for the child." *Haley*, 771 N.E.2d at 747.

Father contends that the evidence does not support the trial court's findings and the findings do not support the judgment. However, in his brief, Father fails to specifically identify which findings are allegedly unsupported by the evidence, with one exception. The trial court found that "Wife's home is a stable home," *see* Appellant's App. p. 32, and Father argues that finding is not supported by the evidence.

At the hearing, evidence was presented that since January of 2001 the children have resided with Mother in Indianapolis. Initially, Mother and the children moved into Stepfather's home, but Mother and Stepfather purchased a new and larger home in the same school district approximately one year before the custody modification hearing. They have resided in that home together since that time. Therefore, although the children moved twice in a one-year period, this evidence supports the trial court's finding that Mother's home is a stable one.[1]

---

1. We also note that when Mother was unable to provide a stable home for the children she asked Father to take primary physical custody of the children from the summer of 2000 until January 1, 2001. Also, Mother did not move the children into Stepfather's home until she and Stepfather had resolved the problems in their marriage.

Father also places great emphasis on the reports of Dr. Edwards and the GAL and their opinions that Father should be awarded physical custody of the children. However, after reviewing the experts' reports and their testimony at the hearing, we are troubled by the fact that both experts only spent approximately three hours interviewing and observing the children, parents, and other relevant individuals.[2] In preparing his report, Dr. Edwards only interviewed Father, Mother, and the children. Additionally, in his evaluation he relied on the Incomplete Sentences Blank worksheet filled out by the children, but admitted at the hearing that it is hard to determine what a child means in making a response on the worksheet without conducting a follow up interview, which he did not do. Although the GAL spoke with all family members concerned in the custody evaluation, he did not speak with any of the children's teachers or school counselors, despite the fact that the decline in K.C.'s school performance is a primary issue in this case. Also in their evaluations, neither Dr. Edwards nor the GAL addressed the fact that Father's fiancée and her thirteen-year old son now reside with Father.

The evidence presented at the hearing reveals that both children, particularly K.C., have experienced problems adjusting to their new home and blended family. K.C.'s grades have suffered and on one occasion, he experimented with marijuana. Also, Stepfather admits that his relationship with K.C. is strained. However, evidence was also presented that both K.C. and N.C. have good relationships with their Mother and their stepsisters, and that they have made several friends in their new neighborhood and school. N.C. has continually maintained consistent grades and has won several art contests. Also, there was a slight improvement in K.C.'s grades in the Spring 2002 semester. As was reflected in their school records and through testimony at the hearing, the children are generally well behaved and respectful of their parents and teachers. Additionally, there was no evidence presented that Mother's failure to move to Lebanon and her subsequent move to Indianapolis was done to deprive Father of his visitation rights. In fact, Mother has allowed Father visitation in excess of his court-ordered visitation rights.

Despite the opinions of Dr. Edwards and the GAL and after reviewing the evidence discussed above, we find that the trial court's decision to deny Father's petition to modify custody is supported by sufficient evidence, which is our standard for review. All parties generally agree that the children have felt stress in their lives due to the divorce, the adjustments required in moving to a new city, and in living with a new stepfamily; however, from the record before us, we cannot conclude that the children have suffered any additional stress than any other child might feel in those circumstances. Acknowledging the high degree of deference we must give to the trial court's decision, we conclude that the trial did not err when

2. It appears that the trial court was also concerned with the experts' failure to interview certain individuals and with the amount of time they spent interviewing the parties. In its findings the trial court stated:

In preparing his supplemental report Edwards spent approximately one hour interviewing the children and one hour interviewing Husband and Wife, but did not interview the live-in girl friend of Husband or her son, the husband of Wife, or any of the children of the Wife's husband; and neither Edwards or [the GAL] interviewed or had any direct contact with the schools or teachers of the children in preparing their supplemental reports.

Appellant's App. p. 33.

it denied Father's petition to modify custody.

## II. In Camera Interview

■ Indiana Code section 31–17–2–9 provides that the trial court "may interview the child in chambers to ascertain the child's wishes," and that if counsel is present, a record may be made of the interview. Ind.Code § 31–17–2–9 (1998). In this case, the trial court stated that it would interview the children in camera if both parties agreed. Mother's attorney refused to agree and an in camera interview of the children did not take place. Father argues that the trial court abused its discretion when it placed that condition on conducting an in camera interview because "[t]he [c]ourt has effectively empowered opposing counsel to prevent an in camera interview, thus impermissibly conveying authority on one party rather than making the decision itself." Br. of Appellant at 14–15.

At the hearing, Father's attorney requested that the trial court conduct an in camera interview with the children. After that request was made, the trial court stated:

> That's —— if you folks agree that I can talk to them without you being present and without it being reported, fine. I'll do it. If you don't agree, I'm not gonna do it. That's the way it is. So, you figure out what you want to do and I —— you won't have any problem with me if you don't agree, because that —— I mean I'm not going to be bothered by that. If anybody thinks that I'm smart enough to talk to some kid for fifteen minutes and find out what's going on in a thirteen year old or eleven year old kid's head. I've raised four children. I've got ten grandchildren and I don't think that's possible. I'm not that smart. But I'll be glad to talk to them if that's what you want. But if you don't agree, the option is you bring them in and have

> them testify. That's about all I know to do. Because I won't agree to talk to them in chambers, even if you agree to it, and have a court reporter present and you guys present, because you might as well do that in the courtroom. There's nobody else in here.

Tr. pp. 126–27. Mother's attorney did not agree to the in camera interview because the trial court stated that it would not be recorded.

Pursuant to Indiana Code section 31–17–2–9, the decision concerning whether to conduct an in camera interview is within the trial court's discretion. The trial court stated that it would not permit any in camera interview to be recorded, nor would it permit counsel or parents to be present. It was within the trial court's discretion to impose those conditions on its willingness to conduct an in camera interview and to require that the parties agree to those conditions. Therefore, the trial court did not abuse its discretion when it imposed those conditions on its willingness to conduct an in camera interview with the children.

## Conclusion

Father has failed to establish prima facie error requiring reversal of the trial court's decision to deny his petition to modify custody. There was evidence presented at the hearing that supports the trial court's judgment, to which we are required to give a substantial degree of deference. Also, the trial court did not abuse its discretion when it refused to conduct an in camera interview with the children.

Affirmed.

KIRSCH and MATTINGLY–MAY, JJ., concur.