## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2016, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

George S. Brasovan
Law Office of George S. Brasovan, PC
Merrillville, Indiana

Megan L. Craig
Craig & Craig, LLC
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Thomas K. Hoffman
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Raymond Hollopeter,

*Appellant-Respondent,*

v.

Sarah Hollopeter,

*Appellee-Petitioner.*

December 20, 2016

Court of Appeals Case No.
45A03-1510-DR-1717

Appeal from the Lake Superior Court

The Honorable Elizabeth F. Tavitas, Special Judge

Trial Court Cause No.
45D03-0708-DR-804

**May, Judge.**

[1] Raymond Hollopeter ("Father") appeals a number of determinations in the trial court's order following petitions by his ex-wife, Sarah ("Mother"), in 2013 to modify support and determine arrears and in 2015 to hold Father in contempt for failing to follow prior court orders. We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] The parties' marriage produced three children. Their divorce was finalized by Special Judge Tavitas in 2009 and incorporated their agreement to share physical and legal custody of the children. During the school year, the eldest was to live with Father and the younger two were to live with Mother. In addition, they agreed:

> 6. [Father] shall pay to [Mother] the sum of $105.44 per week for the support of the parties' two minor children effective March 30, 2009. . . . [Father]'s child support obligation has been calculated on the basis of his current unemployment and receipt of unemployment benefits. [Father]'s current obligation while he is unemployed shall be paid directly to [Mother]. Upon [Father]'s return to work, he shall immediately notify his attorney and [Mother]'s counsel and provide pay stubs to verify his income. [Father]'s attorney shall then recalculate child support and provide a proposed worksheet and Income Withholding Order to [Mother]'s counsel for review. [Mother] shall not be required to file a Petition to Modify and [Father]'s revised child support obligation shall be automatically be [sic] made retroactive to the date he returns to work. In all future years, the parties shall exchange upon receipt their W-2's and, upon filing, their income tax returns. Pursuant to the parties [sic] agreement, any future income from "side jobs" shall not be

included for purposes of calculating child support. When [Father] returns to work, his child support shall henceforth be paid pursuant to an Income Withholding Order.

(App. at 43-44.) Although Father thereafter became employed, the recalculation of support ordered therein did not occur.

[3] In July 2012, the parties appeared in court for a hearing on a IV-D petition the State filed to re-determine support and calculate arrears. On July 19, 2012, because Father was again unemployed, the magistrate who heard the evidence determined Father's support should remain $105 and no arrearage existed. On July 23, 2012, in an order affirming that result, Special Judge Tavitas noted the parties acquiesced to the hearing before the magistrate. Neither party appealed that decision.

[4] In August 2013, because the oldest child was living with her again, Mother filed a petition to modify custody and support. Father failed to pay any support from December 8, 2014, through March 10, 2015. On March 9, 2015, Mother filed a petition requesting Father be held in contempt for, among other things, failing to provide W-2s or tax returns, and failing to timely pay child support. After a hearing, Special Judge Tavitas entered an order that provided, in pertinent part, as follows:

**ISSUES:**

I.     Whether the Court should set aside the Order of July 19, 2012;

II.     Whether Father is in contempt of Court;

III.    Whether Father owes a child support arrearage; and

IV.     Attorney's fees.

## FINDINGS OF FACT:

\* \* \* \* \*

3.      Father was unemployed at the time of the final hearing [in 2009].

4.      [Oldest child] lived with Father for 6 months after the final hearing and then moved in with [Mother] in August 2009 until August 2012.  From August 2012 until January 2013, [oldest child], again, resided with Father.  [Oldest child] has resided with Mother since January 2013.

5.      From December 8, 2014 through March 10, 2015, Father did not pay child support.

\* \* \* \* \*

7.      Father gave his Financial Declaration Forms to Mother only in 2012, 2013, and 2014.

8.      Neither party petitioned the Court to modify custody of [oldest child] at any time that she changed custody until August 2, 2013.  Neither party raised the issues now before the Court when they appeared in Court on July 19, 2012 on the State's Petition for Modification of Support and Determine Arrears.

9.      On July 19, 2012, the parties appeared in the IV-D Court on the State's Petition for Modification of Support and Determine Arrears. The Court issued an Order on July 23, 2012 denying the State's Petition. Father's child support remained at $105.00 per week. The Court determined that no arrears existed.

10.     On July 23, 2012, this presiding judge issued the Order of July 23, 2012 which recognized that this is a Special Judge case which was heard by IV-D Magistrate, Terry Wilson. The Court found that the parties acquiesced to the hearing before Magistrate Wilson. That Order was never appealed.

* * * * *

16.     The Court adopts [Mother]'s Exhibit 3 as the correct worksheets to determine child support, which are attached hereto and incorporated as part of this Order of the Court.

17.     The Court adopts [Mother]'s Exhibit 4 as part of the findings of the Court, which are attached hereto and incorporated as part of this Order of the Court.

18.     Father has incurred a child support arrearage in the amount of $29,768.10 as of May 5, 2015.

19.     Mother requested contribution from Father for a portion of her attorney's fees.

* * * * *

**CONCLUSIONS OF LAW:**

1.      The settlement agreement is not ambiguous.  Accordingly, the Court will construe the settlement agreement according to the plain and ordinary meaning of the terms.

2.      The Court may retroactively modify child support to a date prior to the filing of a petition if there has been a permanent change of custody.

3.      Father willfully and intentionally failed to disclose his employment and income to Mother in a timely fashion.  Accordingly, Father is in contempt of Court.

4.      The Court should not vacate the Court's order of July 19, 2012.  Mother waived her right to object to [the magistrate's] Order.  The IV-D Prosecutor properly filed the Petition in the IV-D Court.  [The magistrate's] Order was correct.  If Father had complied with the provisions of the Settlement Agreement, child support would have been modified by the agreement of the parties.

5.      The issues of res judicata do not apply in this cause with respect to Father's duty to provide Mother with his changes of employment and income.  The IV-D Court's finding of no arrearage on July 19, 2012 is correct based on the previous orders of the Court.  The IV-D Court on July 19, 2012 properly determined the arrearage based upon the previous order for support.  Had Father complied with the Settlement Agreement, there would have been subsequent child support orders to reflect the terms of the parties' settlement agreement.  Father cannot breach a settlement agreement and then benefit from his failure to provide employment and income information which he contracted to do.  The principles of equity require this Court to address the situation that Father himself created by his breach of the settlement agreement.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:**

1.      The Court DENIES Mother's Motion to Vacate the July 19, 2012 Order.

2.      The Court GRANTS Mother's Petition for Rule to Show Cause.

3.      The Court GRANTS Mother's Petition for Modification of Custody and Support.

4.      The parties are ordered to comply with the Settlement Agreement for each year to determine support for each individual year.  For all future years, the parties shall exchange income information by January 31st, and the parties shall determine child support for the upcoming year based upon the previous year's incomes by March 1st of that year.

* * * * *

6.      Father's child support arrearage of $29,768.10 is reduced to judgment in favor of Mother.  Father shall pay current child support in the amount of $176.62 per week for the two minor children retroactive to January 1, 2015, together with the additional sum of $50.00 per week toward the arrearage until the arrearage is paid in full . . . .

* * * * *

8.      Due to the finding that Father is in contempt, Father shall pay $3,000.00 of Mother's attorney's fees.  Said amount is reduced to judgment in favor of [Mother's attorney].

(*Id*. at 7-13.)

# Discussion and Decision

Father requested Special Judge Tavitas enter written findings and conclusions in support of her judgment.  (*See id*. at 63.)  In such a circumstance, we apply a two-tiered standard of review.  *Maddux v. Maddux*, 40 N.E.3d 971, 974 (Ind. Ct. App. 2015), *reh'g denied*.

> First, we determine whether the evidence supports the findings, and second whether the findings support the judgment.  We will reverse only if there is no evidence supporting the findings or the findings fail to support the judgment.  We review the findings of fact using a clearly erroneous standard.  Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made.  We review the conclusions of law using a de novo standard.

*Id*. at 974-75 (footnote and internal citations omitted).

## I.    Paragraph 6 of Agreement

Special Judge Tavitas ordered the parties to re-determine child support every year:

> 4.      The parties are ordered to comply with the Settlement Agreement for each year to determine support for each individual year.  For all future years, the parties shall exchange income information by January 31st, and the parties shall determine child support for the upcoming year based upon the previous year's incomes by March 1st of that year.

(App. at 12.)  Both Father and Mother argue that order exceeded the terms of their agreement, which was incorporated into their divorce decree.  (*See* Appellant's Br. at 13 ("The trial court erred when it added additional terms to the Paragraph 6 terms by ordering the parties to recalculate support by March 31st of each year."), *and see* Appellee's Br. at 4 ("Paragraph 6 did not require the parties to agree to a support modification annually.").)  We agree with the parties.

[7]  Settlement agreements are "contractual in nature and binding if approved by the court."  *Ryan v. Ryan*, 972 N.E.2d 359, 363 (Ind. 2012).  Therefore, we interpret such agreements using the rules for construction of other contracts.  *Id.* at 364.

> [U]nless the terms of the contract are ambiguous, they will be given their plain and ordinary meaning.  Clear and unambiguous terms in the contract are deemed conclusive, and when they are present we will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions.

*Id.* (quoting *Shorter v. Shorter*, 851 N.E.2d 378, 383 (Ind. Ct. App. 2006)).  Interpretation of a settlement agreement is a question of law that we review de novo.  *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008).

[8]  The challenged paragraph was based on Paragraph 6 of the parties' settlement agreement, which provides:

> 6.  [Father] shall pay to [Mother] the sum of $105.44 per week for the support of the parties' two minor children effective March

30, 2009. . . . [Father]'s child support obligation has been calculated on the basis of his current unemployment and receipt of unemployment benefits. [Father]'s current obligation while he is unemployed shall be paid directly to [Mother]. Upon [Father]'s return to work, he shall immediately notify his attorney and [Mother]'s counsel and provide pay stubs to verify his income. [Father]'s attorney shall then recalculate child support and provide a proposed worksheet and Income Withholding Order to [Mother]'s counsel for review. [Mother] shall not be required to file a Petition to Modify and [Father]'s revised child support obligation shall be automatically be [sic] made retroactive to the date he returns to work. In all future years, the parties shall exchange upon receipt their W-2's and, upon filing, their income tax returns. Pursuant to the parties [sic] agreement, any future income from "side jobs" shall not be included for purposes of calculating child support. When [Father] returns to work, his child support shall henceforth be paid pursuant to an Income Withholding Order.

(App. at 43-44.)

[9] That paragraph clearly indicates in "all future years, the parties shall exchange upon receipt their W-2's and, upon filing, their income tax returns." (*Id*. at 44.) It also clearly indicates the parties were to recalculate Father's support obligation upon Father returning to work, without Mother filing a petition to modify. We do not, however, see anything in that paragraph that could indicate the parties were required to "determine child support for the upcoming year based upon the previous year's incomes by March 1st of that year." (*Id*. at 12.) Accordingly, we reverse that paragraph of the order, *see, e.g., Bailey*, 895 N.E.2d at 1218 (reversing trial court's interpretation of settlement agreement

language), and remand for Special Judge Tavitas to replace it with an order requiring, as provided in the settlement agreement:

> In all future years, the parties shall exchange upon receipt their W-2's and, upon filing, their income tax returns. Pursuant to the parties [sic] agreement, any future income from "side jobs" shall not be included for purposes of calculating child support.

(App. at 44.)

## II. July 2012 Order

[10] In 2008, pursuant to Trial Rule 79, Special Judge Tavitas was selected to preside over the divorce proceedings between Mother and Father. Their divorce was finalized in 2009. In December 2011, the State's Title IV-D Office filed a petition in the trial court, under the cause number for the divorce, requesting modification of child support and an order for Father to pay arrearages. In July 2012, a IV-D magistrate held a hearing on that petition and entered an order. Four days later, when Special Judge Tavitas became aware of the magistrate's order, she entered an order affirming the magistrate's findings, conclusions, and order.

[11] The parties and Special Judge Tavitas now disagree how, if at all, that July 2012 order should have impacted the current proceedings. Mother asserts the 2012 order should be held void *ab initio* because the magistrate did not have jurisdiction to hear the petition or enter an order. Father asserts the 2012 order precludes Special Judge Tavitas from now considering issues that involve facts occurring before the July 2012 order. Special Judge Tavitas refused to declare

the 2012 order void or to give it preclusive effect. We hold her first decision was correct, but we reverse as to her second.

### A. Was the 2012 Order Void Ab Initio?

Trial Rule 79 controls the selection and appointment of special judges. That rule explains the length of a special judge's appointment over a case as follows:

> A special judge shall retain jurisdiction of the case, through judgment and post-judgment, including without limitation, proceedings to enforce the judgment or to modify or revoke orders pertaining to custody, visitation, support, maintenance and property dispositions and post-conviction relief unless:
>
> (1) a specific statute or rule provides to the contrary; or
>
> (2) the special judge is unavailable by reason of death, sickness, absence, or unwillingness to serve.

T.R. 79(L).

There seems to be no dispute that rule gave Special Judge Tavitas continuing, post-judgment jurisdiction over this case. As such, when the parties appeared for the hearing on the State's Title IV-D petition in July 2012, unless some other statute, rule, or unavailability intervened, that petition should have been heard by Special Judge Tavitas. *See id*.

When a special judge is unavailable and "[i]f the regular judge, judge pro tempore, temporary judge, or senior judge does not assume jurisdiction . . . , such hearing or trial shall be reset to a date when the special judge is available."

T.R. 79(I); *see also Asher v. Coomler*, 994 N.E.2d 1293, 1286-87 (Ind. Ct. App. 2013) (when party objects to a proceeding set before magistrate because a special judge had been assigned to the case, the party has a right to delay the hearing until the special judge is available).

[15] However, neither Mother nor Father objected to the IV-D petition being heard by the magistrate. *Cf. Asher,* 994 N.E.2d at 1286 (failure to reset hearing was error where father objected to absence of special judge). Mother nevertheless asserts the order entered by the IV-D magistrate must be declared void because that magistrate lacked "jurisdiction" to hear the petition. We cannot agree.

[16] In 2006, our Indiana Supreme Court discussed the distinction between true jurisdictional problems and procedural errors that are sometimes labelled jurisdictional:

> For some time, Indiana has adhered to the rule that the judgment of a court having jurisdiction of the subject matter of the suit and of the person, however irregular, is not void and not impeachable collaterally, unless it may be for fraud. By contrast, a judgment rendered without jurisdiction may be collaterally attacked.
>
> Attorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension. The fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction. . . . .
>
> Thus, while we might casually say, "Judge Flywheel assumed jurisdiction," or "the court had jurisdiction to impose a ten-year sentence," such statements do not have anything to do with the law of jurisdiction, either personal or subject matter. *Real*

> jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment rendered without any service of process. Thus, characterizing other sorts of procedural defects as "jurisdictional" misapprehends the concepts.

*K.S. v. State*, 849 N.E.2d 538, 541-42 (Ind. 2006).

[17] Mother has not asserted the magistrate who heard the IV-D petition lacked jurisdiction over the subject matter or the parties. As such, Mother has asserted a procedural error that could be corrected only by objection at the hearing and, if relief was not obtained, on direct appeal. *See, e.g., id.* at 542 (because juvenile court had jurisdiction over the subject matter of a delinquency petition and the person of the juvenile, procedural error raised as subsequent collateral attack was untimely). Thus, we hold Special Judge Tavitas properly refused to declare the July 2012 order void *ab initio. See, e.g., Woodward v. Norton*, 939 N.E.2d 657, 661 (Ind. Ct. App. 2010) (error waived where party fails to timely object when special judge did not perfect his appointment under T.R. 79).

### B. *Preclusive Impact of the 2012 Order*

[18] As for whether the 2012 order would have any preclusive impact on the issues available for decision under Mother's current petitions, Special Judge Tavitas concluded:

> The issues of *res judicata* do not apply in this cause with respect to Father's duty to provide Mother with his changes of employment and income. The IV-D Court's finding of no arrearage on July 19, 2012 is correct based upon the previous orders of the Court. The IV-D Court on July 19, 2012 properly determined the

arrearage based upon the previous order for support. Had Father complied with the Settlement Agreement, there would have been subsequent child support orders to reflect the terms of the parties' settlement agreement. Father cannot breach a settlement agreement and then benefit from his failure to provide employment and income information which he contracted to do. The principles of equity require this Court to address the situation that Father himself created by his breach of the settlement agreement.

(App. at 11.) Father asserts Special Judge Tavitas erred by concluding the July 2012 order did not preclude the relitigation of his support obligation prior to July 2012. To evaluate his assertion, we must apply the law of *res judicata*.

[19] The doctrine of *res judicata* exists to prohibit repetitious litigation of disputes that are "essentially the same." *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013), *trans. denied*. When a party asserts *res judicata* precludes an action, that party must prove the doctrine applies to the current dispute. *Neese v. Kelley*, 705 N.E.2d 1047, 1051 (Ind. Ct. App. 1999). Claim preclusion[1] "applies where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies." *Angelopoulos*, 2 N.E.3d at 696. The preclusive impact applies not only to those issues actually decided by the prior action, but also to

---

[1] Claim preclusion is also known as "estoppel by judgment." *Neese*, 705 N.E.2d at 1051.

"all matters that were or might have been litigated." *Id.* Before claim preclusion will bar a subsequent action, four requirements must be satisfied:

> (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Id.* With that standard in mind, we evaluate whether the 2012 order precludes Special Judge Tavitas from recalculating Father's child support obligation for weeks prior to July 2012 and ordering Father to pay child support arrearages based on those recalculations.

[20] We have already determined the 2012 order was not void *ab initio* because it was rendered by a court of competent jurisdiction.[2] *See supra* II.A. As such, we need not address that first factor for claim preclusion and turn instead to the fourth factor regarding the identity of the parties. The State filed the Title IV-D "PETITION TO MODIFY SUPPORT AND DETERMINE ARREARS" on behalf of Mother in the cause number for the divorce proceedings between

---

[2] We note Mother's only response to Father's *res judicata* argument is that the 2012 order was void. (*See* Appellee's Br. at 11.) Because Mother has failed to provide argument as to the other three required factors, we may reverse based on Father's argument if he demonstrates *prima facie* error. *See Cunningham v. Cunningham*, 787 N.E.2d 930, 934 (Ind. Ct. App. 2003) (noting appellee's failure to file a brief results in review for *prima facie* error). *Prima facie* error is error appearing "at first sight, on first appearance, or on the face of it." *Id.* (quoting *Johnson Cnty. Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 979, 991 (Ind. Ct. App. 1985)). In such a circumstance, "we do not undertake the burden of developing arguments for the appellee." *Id.*

Mother and Father. (App. at 50.) In her July 23, 2012, order affirming the Magistrate's decision, Special Judge Tavitas found "the parties appeared in person and acquiesced to the hearing." (*Id*. at 53.) These facts lead us to conclude the adjudication in 2012 was "between the parties to the present suit or their privies." *Angelopoulos*, 2 N.E.3d at 696.

[21] As for whether the 2012 judgment was rendered on the merits as to the amount of support Father should be paying and the amount of his child support arrearage, we note the State's Title IV-D petition alleged in pertinent part:

4. That an arrearage exists hereunder.

5. That Father and the State of Indiana have been unable to reach an agreement as to the amount of said arrears.

6. That there has been a substantial and continuing change in circumstances so as to make the terms of the current order unreasonable.

7. That the prior order is over one year old AND there exists more than a 20% deviation from the amount that would be ordered by applying the child support guidelines.

\* \* \* \* \*

**WHEREFORE**, the State of Indiana prays that the existing child support order be modified to a reasonable amount determined by the Court, this matter be set for hearing and for all other relief claimed just and proper in the premises.

(*Id.*)  The parties appeared in open court, the case was "submitted to the Court on all pending issues," (*id*. at 51), and evidence was heard.  The Title IV-D magistrate entered an order that provided, in pertinent part:

> There is no substantial change in circumstance to warrant a modification of support.

> \* \* \* \* \*

> Crediting father with payments made direct to mother for the benefit of the child(ren), no arrears are owed.

> THE COURT NOW ORDERS:

> The petition for modification is Denied.

> The court enters a $0.00 judgment of arrears.

> The Court orders father to continue paying child support in the amount of $105.00 per week.

(*Id.*)  Accordingly, that determination was a judgment on the merits of what Father's support obligation should be and what his child support arrearage was. *See Creech v. Town of Walkerton*, 472 N.E.2d 226, 228 (Ind. Ct. App. 1984) (quoting 46 Am.Jur.2d, *Judgments* § 478 (1969)) ("If the case is brought to an issue, heard on evidence submitted pro and con, and decided by the verdict of a jury or the findings of a court, the judgment rendered is on the merits.").

[22]     The only remaining requirement for claim preclusion is that "the matter now in issue was, or could have been, determined in the prior action." *Angelopoulos*, 2 N.E.3d at 696. In the 2015 order currently being appealed, Special Judge Tavitas found: "Neither party raised the issues now before the Court when they appeared in Court on July 19, 2012 on the State's Petition for Modification of Support and Determine Arrears." (App. at 9.) That finding does not mean, however, that the issue of Father's failure to comply with the settlement agreement *could not have been raised* in that proceeding. To the contrary, if Mother had wished to complain about Father's failure to provide the required employment and income information, she could have raised those issues and she could have insisted the petition be heard by Special Judge Tavitas, who had entered the divorce decree that formalized the settlement agreement.

[23]     Because the questions of Father's child support obligation and arrearage were decided in July 2012, *res judicata* prohibits Mother from raising again in this proceeding issues requiring the recalculation of Father's support before July of 2012. *See, e.g.*, *Neese v. Kelley*, 705 N.E.2d 1047, 1052 (Ind. Ct. App. 1999) (*Res judicata* prohibited trial court from reconsidering issue decided four years earlier. Even if prior decision was incorrect as a matter of law, the court had jurisdiction to enter it. Prior judgment could have been appealed and was binding.). Accordingly, we must reverse the portion of Special Judge Tavitas's order stating "Father has incurred a child support arrearage in the amount of $29,768.10 as of May 5, 2015," (App. at 10), because it included arrearages

from 2010 and 2011. (*See id.* at 31) (Mother's support arrearage calculations, which the court incorporated into final order).

[24] The remaining question, then, is whether the court could modify child support retroactive to July 2012, or only to the date of Mother's petition to modify in August 2013. Father argues retroactive modification of support is clearly erroneous because the circumstances herein do not fall into one of the exceptions for retroactive support modification provided by our Indiana Supreme Court in *Whitted v. Whitted*, 859 N.E.2d 657 (Ind. 2007).

> Retroactive modification is permitted when: (1) the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree, or (2) the obligated parent takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time that a permanent change of custody is exercised.

*Id.* at 662. As Special Judge Tavitas did not have occasion to determine this issue, we remand for her to determine whether either of those conditions for retroactive modification exists and, based thereon, enter a modified support order retroactive either to Mother's filing of the modification petition or to the date after July 2012 when one of those two conditions came into existence.

### III. *Attorney Fees for Contempt*

[25] The trial court concluded Father was in contempt because he "willfully and intentionally failed to disclose his employment and income to Mother in a timely fashion." (App. at 11.) For that contempt, the court ordered Father to

"pay $3,000.00 of Mother's attorney's fees." (*Id*. at 13.) Father alleges that order is erroneous.

If a party is willfully disobedient of a "clear and certain" court order, the party may be held in contempt of court. *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202 (Ind. 2012) (quoting *City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind. 2005)). A trial court has discretion to determine whether a party is in contempt, and we review its decision for an abuse of discretion. *Id*. "Crucial to the determination of contempt is the evaluation of a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully." *Id*.

The trial court's contempt order was based on its determination that Father failed to timely disclose his employment and income to Mother.[3] The July 2012 Order precludes us affirming a finding of contempt based on Father's failure to give financial information to Mother in 2010 and 2011. *See supra* II.B. (facts and issues arising before the court's last order may not be considered). Nor may we affirm the contempt order for failure to disclose income and employment in 2012, 2013, or 2014, because the trial court explicitly found:

---

[3] Mother also notes Father's failure to pay child support in the three months prior to her contempt petition. She asserts he "intentionally and deliberately failed to pay," (Appellee's Br. at 15), when his "support obligation was clear and certain." (*Id*.) While Mother's assertions may have support in the record, the trial court's order did not include any such findings. "When special findings are reviewed, we may not affirm the trial court's judgment on any ground not mentioned in the findings which may be supported by the record, but must determine if the findings are adequate to support the trial court's decision." *Foster v. Bd. of Comm'rs of Warrick Cty., Ind.*, 647 N.E.2d 1147, 1148 (Ind. Ct. App. 1995), *reh'g denied*, *trans. denied*. Accordingly, we cannot affirm the court's contempt order based on Father's alleged failure to pay support from December 2014 to March 2015.

"Father gave his Financial Declaration Forms to Mother only in 2012, 2013, and 2014." (App. at 9.) As such, the remaining year in which Father could have failed to timely provide his income and employment information was 2015. Mother filed her petition for contempt on March 9, 2015, by which time Father should have provided his W-2, if not also his tax return. (*See id*. at 44 ("the parties shall exchange upon receipt their W-2's and, upon filing, their income tax returns"). The Special Judge's final order, which was entered in August of 2015, indicates Father provided the required information "only" in years other than 2015. (*Id*. at 9.) We infer therefrom that Father failed to timely provide financial information to Mother in 2015, and we affirm the order of contempt based thereon.

# Conclusion

[28] We reverse the order that the parties recalculate support every year. We affirm the contempt determination and order of attorney fees based thereon. We reverse the court's modification of child support to a date preceding the July 2012 order, and we remand for the court to enter a new order that complies with the law as explained herein.

[29] Affirmed in part, reversed in part, and remanded.

Baker, J., and Brown, J., concur.